## S11A1330. GIBSON v. THE STATE.
### (717 SE2d 447)

THOMPSON, Justice.

Appellant Charles Gibson was convicted of malice murder and other crimes arising out of the shooting death of his wife, Jamie Gibson.[1] He appeals from the denial of his motion for new trial.

---

[1] The crimes occurred on January 6, 2004. On March 12, 2004, appellant was indicted by a Fulton County grand jury for malice murder, felony murder while in the commission of aggravated assault, felony murder while in the commission of the crime of possession of a firearm by a convicted felon, aggravated assault, possession of a firearm by a convicted felon, and possession of a firearm during the commission of a felony. After a jury trial on February 22-28, 2008, appellant was found guilty of all charges. On February 29, 2008, the trial court sentenced appellant to life imprisonment for malice murder, a consecutive five-year term of imprisonment for possession of a firearm by a convicted felon, and a consecutive five-year term of imprisonment for possession of a firearm during the commission of a felony. The felony murder count based on possession of a firearm was dead-docketed. The remaining felony murder and aggravated assault convictions were merged and vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369 (4) (434 SE2d 479) (1993). A motion for new trial was filed on

Finding no error, we affirm.

1. Viewed in the light most favorable to the verdict, the jury was authorized to find that in the early morning hours of January 6, 2004, appellant made several telephone calls to James Gillespie, an individual he believed was involved in a relationship with his wife. Gillespie ignored several of appellant's calls and after answering the last call, heard appellant say "I told you to quit messing with my wife," followed by five successive gunshots. Appellant then stated, "I just killed her. I just killed the b___ and I'm coming for your throat." Gillespie hung up and called Jamie's mother, who called police and asked them to go to Jamie's apartment to check on her. Police found Jamie dead on her couch.

We find the evidence was sufficient to allow any rational jury to find appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant contends the trial court erred by denying his pretrial motion to suppress evidence of the murder weapon and photographs of the crime scene because there were no exigent circumstances authorizing a warrantless search. Upon tender of this evidence at trial, however, appellant's counsel stated he had "no objection" to the admission of this evidence, thereby waiving any objection he may have had. See *Monroe v. State*, 272 Ga. 201 (6) (528 SE2d 504) (2000).

Even if objection had been made, however, we agree with the trial court's determination that the search was authorized due to the exigent circumstances. The victim's mother called police and informed them of her concern for her daughter's welfare because appellant, while talking to Gillespie, fired a gun numerous times and announced he killed the victim. When officers arrived at appellant's residence to conduct the welfare check, they noticed damage to the door jam, announced themselves as police officers, and knocked on the door, which, they discovered, was ajar. The officer's knock caused the door to open slightly, allowing them to see the victim lying motionless on the couch. They called out to her, and after she failed to respond to their calls, officers were authorized to proceed into the residence immediately to come to her aid. See *Mincey v. Arizona*, 437 U. S. 385, 392-393 (98 SC 2408, 57 LE2d 290) (1978) (right of police to respond to emergency situations beyond question); *Perkins v. State*, 269 Ga. 791 (3) (505 SE2d 16) (1998) (entry without warrant

March 11, 2008, and amended on March 26, 2010. The motion was denied on November 5, 2010. Appellant filed a notice of appeal on November 30, 2010. The appeal was docketed in this Court for the September 2011 term and orally argued on September 19, 2011.

and seizure of items in plain view were permissible under either the consent or exigent circumstances exceptions since defendant's wife reported a stabbing, asked the police to enter the apartment, and gave them a key); *Gilreath v. State*, 247 Ga. 814, 819-820 (279 SE2d 650) (1981) (Fourth Amendment does not bar warrantless entries and searches when person within needs immediate aid or police come upon scene of homicide). Based on this evidence, the trial court did not err by concluding the search was justified and the challenged evidence was admissible at trial.

3. Teresa Melton, a friend and co-worker of the victim, testified that one week prior to the crimes the victim told her she intended to divorce appellant. She also testified about statements the victim made regarding appellant's abusive behavior, including an instance during which appellant bleached her clothes while holding a gun to her head. The trial court admitted the victim's out-of-court statements to Melton under the necessity exception to the hearsay rule. See OCGA § 24-3-1 (b). Appellant contends the admission of this evidence was error because the statements were not trustworthy.

OCGA § 24-3-1 (b) provides that hearsay evidence is admissible in "specified cases from necessity." Hearsay is admissible under the necessity exception if: (1) the declarant of the statement is unavailable; (2) the declarant's statement is relevant and more probative of a material fact than other evidence that may be procured and offered; and (3) the statement exhibits specific indicia of reliability. *Mills v. State*, 287 Ga. 828 (3) (700 SE2d 544) (2010). In determining whether an out-of-court statement bears sufficient indicia of trustworthiness, we look at the totality of the circumstances. *Roper v. State*, 263 Ga. 201, 202 (429 SE2d 668) (1993). Whether a statement is trustworthy is a matter for the trial court's discretion, and the exercise of such discretion will not be overturned absent an abuse of discretion. *Myers v. State*, 275 Ga. 709 (2) (572 SE2d 606) (2002).

Here, the first and second prerequisites are satisfied because the victim is deceased and unavailable to testify, the statements are relevant to show appellant's intent, motive, and bent of mind, and are more probative of these facts than other evidence that could be procured and offered. See *Watson v. State*, 278 Ga. 763, 765 (604 SE2d 804) (2004). The third prerequisite, particularized guarantees of trustworthiness, is likewise satisfied. The record supports the trial court's finding that although Melton and the victim had only known each other for six months, they were close personal friends who frequently worked together and regularly confided in each other about personal matters, including the fact that the victim was involved in an extra-marital affair with Gillespie. The victim had no reason to lie to Melton and her statements were made during routine conversations regarding the victim's personal matters. The absence

of corroborating evidence and the fact that the victim worked as an adult dancer do not render the victim's statements less trustworthy under the circumstances of this case. See *Yancey v. State*, 275 Ga. 550 (2) (c) (570 SE2d 269) (2002) (although courts have sometimes relied on corroborating evidence as indicia of reliability, existence of corroborating evidence is more properly considered in deciding whether error in admitting statement was harmless). Accordingly, the trial court did not abuse its discretion by holding Melton's testimony about the victim's statements bore sufficient indicia of trustworthiness to be admissible under the necessity exception to the hearsay rule. See *McPherson v. State*, 274 Ga. 444 (10) (553 SE2d 569) (2001) (guaranty of trustworthiness shown by testimony that women were close friends with victim who routinely confided in them with respect to personal matters); *Thomas v. State*, 274 Ga. 156 (8) (549 SE2d 359) (2001) (statements to close friend whom victim had known only a short period admissible under necessity exception).

4. Appellant contends the trial court erred by failing to affirmatively place on the record appellant's decision to testify in his own behalf. He failed to make this objection at trial, however, and has waived the right to assert this alleged error on appeal. See *Price v. State*, 280 Ga. 193 (3) (625 SE2d 397) (2006).

Even assuming the issue is properly before the Court, we find no error. Because the decision whether to testify in one's own defense is a "tactical decision to be made by the defendant himself after consultation with trial counsel," there is no general requirement that a trial court interject itself into the decision-making process. *Burton v. State*, 263 Ga. 725, 728 (438 SE2d 83) (1994). Courts thus have no duty to advise a defendant of the right to testify or to determine on the record whether the defendant's decision is voluntary, knowing, and intentional. Id. But see *State v. Nejad*, 286 Ga. 695, 697, n. 3 (690 SE2d 846) (2010) (recognizing courts may wish to engage in colloquy with defendant regarding right to testify as prophylactic measure). See also *United States v. Ly*, 646 F3d 1307 (11th Cir. 2011) (district court does not normally engage in colloquy with defendant to ensure decision whether to testify was made knowingly and intelligently). Contrary to appellant's assertion, it follows that courts are under no obligation to place a defendant's decision whether to testify on the record, and it was not error for the trial court to fail to do so here.[2]

---

[2] The circumstances in this appeal do not render it one of the "exceptional circumstances" where the trial court knows a defendant has not exercised his right to decide whether to testify knowingly and intelligently, thereby giving rise to a possible duty on the part of the court to make further inquiry of the defendant. See *Ly*, supra at 1317 (III) (C). We, therefore,

5. We find no error in the trial court's removal of a juror after concluding the juror slept through the presentation of portions of the evidence. OCGA § 15-12-172 provides:

> If at any time, whether before or after final submission of the case to the jury, a juror dies, becomes ill, upon other good cause shown to the court is found to be unable to perform his duty, or is discharged for other legal cause, the first alternate juror shall take the place of the first juror becoming incapacitated. . . .

"There must be some sound basis upon which the trial judge exercises his discretion to remove the juror." (Punctuation omitted.) *Green v. Zant,* 715 F2d 551, 555 (11th Cir. 1983). However, a sound basis may be one which serves "the legally relevant purpose of preserving public respect for the integrity of the judicial process." (Punctuation omitted.) *Murray v. State,* 276 Ga. 396, 399 (4) (578 SE2d 853) (2003).

Here, early on the first day of trial the judge noted his concern that a particular juror had been sleeping during the presentation of the evidence. At the start of the next trial day, the juror was warned he would be held in contempt if he did not stay awake. After an overnight recess, the trial judge informed counsel he had again observed the juror sleeping and that he intended to determine if the juror had a medical problem. The juror ultimately admitted to the court he was taking medications, one of the side effects of which made it difficult for him to stay awake. Before closing argument and over defense counsel's objection, the trial judge announced he was removing the juror because he felt the juror had missed much of the presentation of evidence during the first two days of trial.

The record thus reflects that the court conducted an investigation into the juror's inability to perform his duties and developed a factual basis for its decision to remove the juror for a legally relevant purpose. Based on this evidence, we cannot say the trial court abused its discretion in removing the juror. *State v. Arnold,* 280 Ga. 487, 489-490 (629 SE2d 807) (2006). Because the juror's incapacity was obvious to both parties, no additional inquiry by the trial court was required. See *Zant,* supra at 556 (where basis for juror's incapacity is not certain or obvious, hearing or inquiry is appropriate).

6. Finally, appellant contends he did not receive effective representation of trial counsel in a number of respects. In order to prevail on a claim of ineffective assistance of counsel, appellant must show

---

do not consider in this opinion a trial court's duty to engage in an on the record discussion regarding a criminal defendant's decision whether to testify under such circumstances.

both that counsel's performance was deficient and that the deficient performance was prejudicial to his defense. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985). To satisfy the first prong, appellant must overcome the strong presumption that counsel's performance fell within a "wide range of reasonable professional conduct," and that counsel's decisions were "made in the exercise of reasonable professional judgment." Id. The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the particular circumstances of the case. Id. at 784. To satisfy the second prong, appellant must demonstrate there is a reasonable probability that, absent any unprofessional errors on counsel's part, the result of his trial would have been different. Id. at 783. " 'We accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

(a) Appellant argues trial counsel performed deficiently by failing to renew the motion to suppress after evidence was presented at trial questioning the location from which appellant called Gillespie and the manner in which the murder weapon was discovered. There is no evidence, however, that a renewed motion would have been granted or that appellant suffered prejudice as a result of counsel's performance. Regardless of appellant's location when he called Gillespie, police discovered the victim's body while conducting an early morning welfare check at the victim's home, where they found the front door of the residence partially ajar. The justification for their entry into the residence and concomitant seizure of items in plain view arose from the exigent circumstance of discovering a dead body. With regard to the murder weapon, trial evidence demonstrated the gun became "readily apparent" to officers when the medical examiner arrived and placed his satchel on the couch, thereby compressing the cushion and clearly exposing the gun. That the weapon came into plain view after placement of the satchel on the couch does not in this case undermine the correctness of the trial court's conclusion that the gun was discovered in plain view. Accordingly, renewing the motion would have been of no benefit to appellant, and the failure to renew could not have prejudiced appellant. See *Jimmerson v. State*, 289 Ga. 364 (2) (d) (711 SE2d 660) (2011) (failure to renew non-meritorious motion provides no grounds for claim of ineffective assistance of counsel); *Freeman v. State*, 278 Ga. 349 (2) (b) (603 SE2d 214) (2004) (same).

(b) Appellant also asserts trial counsel was deficient for failing to call him to testify in his own defense and not calling his mother as a witness. With regard to appellant's own testimony, counsel stated at

the motion for new trial hearing that he recalled the trial court advising appellant of his right to testify and that the decision whether to testify was one to be made by appellant. Appellant admitted he never told the court he wished to testify, and counsel testified appellant never indicated to him that he wished to take the stand on his own behalf. Under these facts, appellant made no showing that the failure to call him as a witness was indicative of ineffectiveness as opposed to a deliberate and reasonable trial strategy, and the trial court was authorized to conclude appellant had not carried his burden of proving ineffective assistance of counsel on this ground. See *State v. Nejad*, supra at 695 (1) (decision whether to testify is ultimately defendant's to make); *Lupoe v. State*, 284 Ga. 576 (3) (d) (669 SE2d 133) (2008) (no evidence of ineffectiveness where evidence showed defendant chose not to testify after being informed of right to do so).

As to appellant's mother, "the determination of which witnesses to call . . . is a strategic and tactical decision within the exclusive province of the attorney after consultation with the client. [Cit.]" *Fairclough v. State*, 276 Ga. 602, 605 (4) (581 SE2d 3) (2003). Appellant has failed to overcome the strong presumption that counsel's tactical decision not to call his mother falls within the broad range of professional conduct. In addition, appellant has failed to show how this witness' testimony would have changed the outcome of the trial when the same evidence appellant contends she would have testified to was admitted through other witnesses. *Wesley v. State*, 286 Ga. 355 (3) (h) (689 SE2d 280) (2010) (no ineffective assistance based on counsel's failure to present cumulative evidence).

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 3, 2011 —
RECONSIDERATION DENIED NOVEMBER 7, 2011.

*Charles H. Frier*, for appellant.
*Paul L. Howard, Jr., District Attorney, Paige Reese Whitaker, Lenny I. Krick, Assistant District Attorneys, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Sara K. Sahni, Assistant Attorney General*, for appellee.