306 Ga. 475
FINAL COPY

S19A0861.  JACKSON v. THE STATE.

MELTON, Chief Justice.

Following a jury trial, David Jackson was found guilty of malice murder, aggravated assault, and various other offenses in connection with the stabbing death of John Norman Thomas.[1] On appeal, Jackson contends that the trial court committed plain error by giving an incorrect jury instruction on self-defense, that the trial court erred in its recharge to the jury on voluntary manslaughter,

[1] On January 28, 2016, Jackson was indicted for malice murder, felony murder predicated on aggravated assault, aggravated assault, and possession of a knife during the commission of a felony. Following an October 3-4, 2016 jury trial, Jackson was found guilty on all counts. On October 4, 2015, the trial court sentenced Jackson to life in prison for malice murder and five consecutive years for possession of a knife during the commission of a felony. The felony murder count was vacated by operation of law, *Malcolm v. State*, 263 Ga. 369 (4) (434 SE2d 479) (1993), and the remaining aggravated assault count was merged into the malice murder count for sentencing purposes. Jackson filed a motion for out-of-time appeal on August 21, 2017, which was granted on November 15, 2017. He then filed a motion for new trial with new counsel on December 4, 2017, which he amended on January 23, 2018. Following an April 24, 2018 hearing, the trial court denied the motion on December 6, 2018. Jackson filed a timely notice of appeal on December 17, 2018, and his appeal was docketed to the April 2019 term of this Court and submitted for a decision on the briefs.

and that his trial counsel was ineffective. For the reasons that follow, we affirm.

1. Viewed in the light most favorable to the jury's verdict, the evidence presented at trial reveals that, on December 24, 2013, Jackson stabbed Thomas multiple times with a steak knife while he was with Thomas in the yard of a home in Warren County. A neighbor who was across the street from the stabbing saw Jackson, who seemed to be on his knees, moving his arm in a stabbing motion toward the ground. The witness then saw Jackson kick Thomas three or four times while Thomas was on the ground. The witness observed Jackson throw something in the bushes and then return to kick Thomas again. Jackson walked away from Thomas, leaving him dying in the yard. The neighbor called Jackson's girlfriend, Eula Evans, and told her to come and get Jackson. The neighbor then called 911, and she crossed the street, finding Thomas bleeding heavily in the yard.

An officer who responded to the scene attempted to communicate with Thomas, who was still alive at the time, but

2

Thomas was unable to speak. Thomas had suffered at least forty-seven sharp force injuries, including ten stab wounds to his head and neck and five stab wounds to his torso. Thomas died from the stab wounds to his neck and torso.

Police found a black-handled steak knife with blood on it in the dirt driveway outside of the house where the stabbing had taken place, and no weapons were found on Thomas. Police also discovered drops of blood leading away from the scene and along the route that Jackson had walked after the stabbing. DNA testing later revealed that the blood drops leading away from the scene belonged to Jackson, and that two sets of blood profiles were present on the knife. The major blood profile on the sharp tip of the knife and the hilt of the knife where the blade joins the handle belonged to Thomas, and the only place on the knife where the major blood profile belonged to Jackson was on the handle.

Police saw Jackson at the same hospital where Thomas had been taken after the stabbing, as Jackson was there to be treated for a laceration to the side of his face, a small wound to his abdomen,

and some abrasions to his head. Jackson later claimed in an interview with police that Thomas had attacked and stabbed him, and that Jackson took the knife away from Thomas before stabbing him two or three times. Jackson also claimed in his statement that Thomas was still trying to fight him after Jackson had stabbed Thomas to defend himself and had walked away from Thomas.

Although Jackson has not challenged the sufficiency of the evidence in this case, it is our customary practice to review the sufficiency of the evidence in murder cases. See, e.g., *Wainwright v. State*, 305 Ga. 63 (1) (823 SE2d 749) (2019). Having done so, we conclude that the evidence presented at trial was sufficient to authorize a rational jury to reject Jackson's claim of self-defense and find him guilty beyond a reasonable doubt of the crimes for which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979); *Cotton v. State*, 297 Ga. 257, 258 (1) (773 SE2d 242) (2015) (despite defendant's claim of self-defense, jury is "free to accept the evidence that [a] stabbing was not done in self-defense and to reject any evidence in support of a justification defense")

4

(citation and punctuation omitted).

2. Jackson contends that the trial court committed plain error[2] by giving a pattern jury instruction on self-defense that included language stating that the defendant must not have acted "in the spirit of revenge" at the time that he was defending himself in order to properly claim self-defense. Compare Code of 1933, § 26-1012 (stating that party asserting justification defense must have "acted under the influence of [the] fears [of a reasonable man], and not in a spirit of revenge") with OCGA § 16-3-21 (containing no "spirit of revenge" language and stating that "a person is justified in using force which is intended or likely to cause death or great bodily harm only if he or she reasonably believes that such force is necessary to prevent death or great bodily injury to himself or herself or a third person or to prevent the commission of a forcible felony").[3]

---

[2] Because Jackson did not object to this jury charge at trial, our review of this issue is limited to an analysis for plain error. See OCGA § 17-8-58 (b); *Clark v. State*, 299 Ga. 552 (2) (787 SE2d 212) (2016).

[3] As we explained in *Pena v. State*, 297 Ga. 418, 424 (6) (b) n.5 (774 SE2d 652) (2015):

5

In order to satisfy the test for plain error,

> [f]irst, there must be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the *discretion* to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

(Citation and punctuation omitted; emphasis in original.) *State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011).

"[A] jury instruction must be adjusted to the evidence and embody a correct, applicable, and complete statement of law." (Citation and punctuation omitted.) *Roper v. State*, 281 Ga. 878, 880

---

In 1968, when the statutes setting forth defenses to criminal liability were rewritten as a part of an act to provide a new Georgia Criminal Code, the "spirit of revenge" language [in section 26-1012 of the Code of 1933] was omitted from the provisions defining justification. See Ga. L. 1968, pp. 1249, 1272-1274, enacting Chapter 26-9, "Defenses to Criminal Liability," composed of Code Ann. §§ 26-901 through 26-907; Code Ann. § 26-902. The current version of the statute [OCGA § 16-3-21] also omits this language.

(2) (644 SE2d 120) (2007). Here, there was no error in giving the jury charge in question, as this Court has previously determined that, despite the fact OCGA § 16-3-21 does not contain language indicating that a defendant must show that he or she did not act in the spirit of revenge in order to assert self-defense,

> when comparing the current language of OCGA § 16-3-21 with the previous statute that included the "spirit of revenge" language . . . "[i]n essence the old law and the new law have the same standard as to justification of homicide." *Brooks v. State*, 227 Ga. 339, 342 (3) (180 SE2d 721) (1971). Therefore, the instruction at issue [that included the "spirit of revenge" language] is [still] a correct statement of the law.

*Pena v. State*, 297 Ga. 418, 425 (6) (b) (774 SE2d 652) (2015). Because the trial court did not clearly err by giving the self-defense charge in question, Jackson does not carry his burden of showing plain error.

3. Jackson also claims that the trial court plainly erred in its recharge to the jury on voluntary manslaughter. Jackson is incorrect.

The record reveals that, during its deliberations, the jury sent

7

a note to the trial court asking for clarification on the difference between "involuntary manslaughter" and malice murder. However, because involuntary manslaughter was not at issue in the case, the court asked the jury foreperson if the jury intended to ask about voluntary manslaughter rather than involuntary manslaughter. The following colloquy then took place:

> JURY FOREPERSON: Voluntary, I'm sorry. Yes, sir, voluntary.
> COURT: Okay.
> JURY FOREPERSON: But if I might, Judge, when you were charging us and telling us the law you mentioned voluntary manslaughter, and I heard you say the word revenge at that time, and none of us completely understood that. We should have asked you at that time, but —
> COURT: Okay. That's all right. I just —
> JURY FOREPERSON: I'm sorry, I just want the voluntary manslaughter.
> COURT: So your question is voluntary, then?
> JURY FOREPERSON: I'm sorry, yes.

The trial court then recharged the jury on both malice murder and voluntary manslaughter. After doing so, the following exchange occurred between the court and the jury foreperson:

> COURT: Does that answer your question?
> JURY FOREPERSON: Yes, sir.

8

Defense counsel did not object to the manner in which the trial court recharged the jury, even when the trial court asked if he had any objection, but Jackson now contends on appeal that the recharge was insufficient to address any specific confusion that the jury may have had about the trial court saying the word "revenge" at some point during its initial charge. However, as noted in the colloquy above, the record supports the conclusion that the recharge *did* in fact clear up any confusion that the jurors may have had, as indicated by the jury foreperson informing the court that the jury "just want[ed] the voluntary manslaughter" charge again and that the recharge actually given answered the jury's question. We see no abuse of discretion in the trial court's decision to recharge the jury in full on malice murder and voluntary manslaughter in response to the jury's question. See *Salahuddin v. State*, 277 Ga. 561, 564-565 (4) (592 SE2d 410) (2004) ("Where the jury requests further instructions upon a particular phase of the case, the court in [its] discretion may recharge them in full, or only upon the point or points

requested.") (citation, punctuation and emphasis omitted). Accordingly, Jackson does not show any error, let alone plain error, from the recharge given.

4. Jackson asserts that his trial counsel was ineffective for (a) failing to object to the trial court's jury charge on self-defense, (b) failing to call Jackson or his girlfriend, Evans, to testify on Jackson's behalf at trial, (c) failing to present evidence of Jackson's fear of Thomas, and (d) failing to present evidence of Thomas's reputation in the community. We disagree.

> In order to succeed on his claim of ineffective assistance, [Jackson] must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984). If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong. Id. at 697 (IV); *Fuller v. State*, 277 Ga. 505 (3) (591 SE2d 782) (2004). In reviewing the trial court's decision, "'[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

*Wright v. State*, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012).

(a) For the reasons stated in Division 2, supra, an objection to the trial court's charge on self-defense would have been meritless. Accordingly, trial counsel's failure to make such an objection does not amount to ineffective assistance. *Hayes v. State*, 262 Ga. 881, 884 (3) (c) (426 SE2d 886) (1993) ("Failure to make a meritless objection cannot be evidence of ineffective assistance.").

(b) Trial counsel testified at the motion for new trial hearing that he spoke to Evans and Jackson several times before trial and that he also reviewed Evans's statement to police. Having done so, trial counsel discovered that Evans did not witness the altercation between Jackson and Thomas and that she only went to meet Jackson after he was leaving the scene of the stabbing in order to take him to the hospital. Accordingly, trial counsel concluded that Evans's testimony would not have added anything particularly useful to the case, and he made a strategic decision not to call her as a witness.

[T]rial counsel's decision as to which defense witnesses to call

is a matter of trial strategy and tactics, and tactical errors in that regard will not constitute ineffective assistance of counsel unless those errors are unreasonable ones no competent attorney would have made under similar circumstances.

(Citation and punctuation omitted.) *Cato v. State*, 304 Ga. 496, 501 (3) (820 SE2d 41) (2018). Here, trial counsel came to the reasonable conclusion that Evans's testimony would not have advanced Jackson's theory of self-defense, and Jackson has not shown that counsel's performance in failing to call her as a witness was deficient.

Jackson also claims that his trial counsel was ineffective for failing to call Jackson to testify in support of his claim of self-defense. However, the record reveals that Jackson's theory of self-defense was already presented to the jury in the form of his statement to police in which he claimed that he was defending himself from Thomas's attack at the time that he stabbed him. Thus, Jackson's testimony was not needed to establish self-defense.

To the extent that Jackson claims that his trial counsel somehow inadequately presented his self-defense claim by failing to

present Jackson's own testimony, trial counsel testified at the motion for new trial hearing about the inconsistencies and problems that Jackson's testimony could have created if presented at trial. Specifically, in light of the DNA evidence showing only blood profiles from Thomas and Jackson on the knife used in the stabbing, Jackson's counsel believed that any testimony from Jackson implying that a third party must have stabbed and killed Thomas after Jackson had only stabbed the victim "two or three times" in self-defense and then walked away would not have come across as credible. Accordingly, Jackson has not shown "that the failure to call him as a witness was indicative of ineffectiveness as opposed to a deliberate and reasonable trial strategy." *Gibson v. State*, 290 Ga. 6, 12 (6) (b) (717 SE2d 447) (2011).

In any event, trial counsel left the ultimate decision to testify up to Jackson, and Jackson himself made an informed decision not to testify after consulting with trial counsel at the close of the State's case at trial. Because Jackson was fully informed of his right to testify, it cannot be said in this case that his failure to testify on his

13

own behalf was in any way connected to any alleged deficiency of his trial counsel. See Gibson, supra, 290 Ga. at 12 (6) (b). See also, e.g., *Lupoe v. State*, 284 Ga. 576 (3) (c) (669 SE2d 133) (2008).

(c) With respect to counsel's failure to present evidence of Jackson's alleged fear of Thomas, trial counsel testified at the motion for new trial hearing that Jackson never informed him that he harbored any sort of fear of Thomas before he was allegedly attacked, and counsel "cannot possibly have performed deficiently by having failed to present [evidence] of which [Jackson] had never made him aware." (Citation omitted.) *Lewis v. State*, 294 Ga. 526, 529 (755 SE2d 156) (2014). Also, as noted in Division 4 (b), supra, Jackson chose not to testify when he had the opportunity to present evidence of his alleged fears through his own testimony.

(d) Similarly, when asked if he had been told anything about Thomas's reputation in the community, trial counsel testified at the motion for new trial hearing that he had not. Trial counsel went on to testify that he was given the impression by Jackson and Evans that they "didn't really know [Thomas] personally . . . [and] just kind

14

of knew [Thomas] when they saw him and spoke." Accordingly, trial counsel had no basis to pursue and attempt to introduce at trial evidence relating to Thomas's alleged reputation, and Jackson has failed to meet his burden of showing deficient performance. See *Lewis*, supra, 294 Ga. at 529.

5. Jackson also urges, in a separate enumeration, that the trial court erred in denying his motion for a new trial in light of all of the same alleged errors that he raises, and that we have rejected, in Divisions 1-4, supra. Thus, "[n]othing is raised [in this separate enumeration] that is not raised elsewhere in his brief, and this enumeration is without merit." *Wade v. State*, 261 Ga. 105, 108 (11) (401 SE2d 701) (1991).

*Judgment affirmed. All the Justices concur.*

DECIDED AUGUST 5, 2019.

Murder. Warren Superior Court. Before Judge Hinesley.
*Jane S. Dansie*, for appellant.
*William P. Doupé, District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew M. Youn, Assistant Attorney General*, for appellee.