**SECOND DIVISION**
**MILLER, P. J.,**
**RICKMAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**September 5, 2019**

# In the Court of Appeals of Georgia

A19A1545. THE STATE v. BAKER.

RICKMAN, Judge.

Trelon Baker was tried by a jury and convicted of armed robbery, aggravated assault, possession of a firearm during the commission of a crime, and possession of a firearm by a first offender probationer. Baker moved for a new trial, asserting that the trial court erred in dismissing a juror after deliberations had begun without directly confronting the juror about the issues leading to her dismissal. After conducting a hearing at which the dismissed juror testified, the trial court granted Baker's motion for new trial. On appeal, the State contends that the trial court erred in relying on federal case law to grant the motion for new trial and that Baker invited any error in dismissing the juror. For reasons that follow, we affirm.

During deliberations, the jury sent a note to the trial court stating, "[a]fter an intense discussion we are unable to reach a unanimous decision whether Trelon Baker was at the scene." The trial court interpreted the note to mean that they had "a hung jury right now," but decided not to do anything at that point because the jury had only been deliberating for approximately three hours. The next morning, after the jury had resumed its deliberations, the bailiff reported that he was sitting outside of the jury room and overheard a verbal argument that "seemed to get personal," involving one person being on the defensive against "multiple parties." The bailiff stepped in and told them to relax and calm down.

Shortly after the bailiff left the jury room, the jury sent out another note stating, "[w]e are unable to openly discuss the charges because one juror will not communicate and has stonewalled." After some discussion with counsel, the trial court decided to bring the foreperson out for questioning. The foreperson stated that "there is a concern with one of the jury members," and that "the other jurors would like this person dismissed based on certain things they are all concerned about." The foreperson mentioned that the juror at issue was "[n]ot very open to discussion," and that there were "concerns that she really didn't get everything out of the trial." The trial court asked the foreperson if she was aware that one of the jurors fell asleep

2

during the trial, and the foreperson said yes, "that's what we're worried about." The foreperson went on to state that "I feel like she thinks we're all against her, but we're not. But she can't communicate with us, and a lot of jurors have brought up the fact that she did sleep a lot through the trial."

After the foreperson left, the State moved to have the juror at issue excused and replaced with an alternate. Defense counsel suggested that the juror be brought out and questioned about the issues that had been raised, but the trial court proceeded to replace the juror because of her sleeping and her alleged failure to deliberate. Defense counsel objected to the trial court's refusal to question the juror, and the trial court noted counsel's objection. After the trial court informed the foreperson that the juror was going to be removed, defense counsel renewed her objection "that we dismissed that juror without inquiring of her what the issues were during deliberations." The trial court overruled the objection, and the jury restarted its deliberations with the alternate juror. Approximately two hours later, the jury returned a unanimous verdict, finding Baker guilty of all charges submitted for their consideration.

At the motion for new trial hearing, the dismissed juror testified that she is from Ghana, where she was a police officer for 15 years. The juror testified that the interaction between her and the other jurors was "not great because every time I tried

3

to give my opinion I was shut down by another juror that would jump in my face and I wasn't given a chance to express myself." She testified that she tried to speak slowly and enunciate properly so that the other jurors could understand her, but that several jurors were rude to her. The juror "felt that [she] was being taken advantage of because [she] was the only black person [on] the jury and they were all ganging up against me." She was frustrated by the situation and sought help from the foreperson. She testified that she never stopped participating and thinks that she and the other jurors could have reached an agreement despite the fact that, after considering all of the evidence, she did not think that Baker was guilty. When asked about the sleeping issue, the juror testified that she normally worked the night shift and slept during the day, but denied sleeping during the trial. She testified that she was resting her eyes at one point and that "the Judge did see that," but testified that she was still listening with her eyes closed.

The trial court ruled from the bench and granted the motion for new trial, noting that "the best practice is that we should have as much information on the record as we can." At the State's request, the court then provided the State additional time to file a response brief before issuing any written order on the motion. In its written order, the trial court ruled that the "[c]ourt erred by dismissing a juror after

4

deliberations had begun without directly confronting the juror regarding an alleged failure to deliberate and allegedly sleeping during the trial." The trial court concluded that it could not determine at that point whether the juror had been properly dismissed because adequate inquiry with the juror had not been conducted.

1. The State contends that the trial court erred by relying on federal case law in making its decision to grant a new trial. Specifically, the State takes issue with the trial court's reliance on *Green v. Zant*, 715 F2d 551 (11th Cir. 1983).

As a general matter, the trial judge has broad discretion when considering a motion for new trial. *State v. Tunkara*, 298 Ga. 488, 490 (782 SE2d 278) (2016). "The right and power of a court, upon a motion for a new trial, to review its own rulings in the case, and where the same are erroneous, to grant a new trial, exists by virtue of its own constitution and establishment, without any act of the legislature; it is an inherent power in all courts to do right." (Citation and punctuation omitted.) Id. Pursuant to OCGA § 5-5-25, which is applicable here, "[i]n all motions for a new trial on other grounds not provided for in this Code, the presiding judge must exercise a sound legal discretion in granting or refusing the same according to the provisions of the common law and practice of the courts." See, e.g., *Craft v. State*, 254 Ga. App. 511, 523 (14) (563 SE2d 472) (2002) (a trial court's decision on a motion for new

trial based on juror misconduct will be upheld on appeal unless it constitutes an abuse of discretion). The State contends that the trial court failed to follow the directive of OCGA § 5-5-25 when it relied on *Green v. Zant* to conclude that additional inquiry was required before dismissing the juror.

*Green v. Zant* involved the review of a federal habeas corpus petition in a Georgia death penalty case. 715 F2d at 553. The petitioner alleged that the trial court's discharge of one juror during deliberations without investigation violated the petitioner's sixth, eighth, and fourteenth amendment rights. *Green v. Zant,* 715 F2d at 554. The issue arose during sentencing deliberations, when one of the jurors collapsed, repeatedly crying "I can't do it," and the trial court questioned the foreperson, who told the court that the juror in question was physically and emotionally unable to continue deliberating. Id. Without questioning the juror or seeking medical advice, the trial court replaced the juror with the first alternate. Id. at 555. During the petitioner's state habeas corpus hearing, the dismissed juror submitted an affidavit stating that she had every intention of continuing as a juror and that her statement "I can't do it" referred to her determination that a death sentence should not be imposed in the case. Id. at 555. The Eleventh Circuit recognized that one factor in the juror's dismissal may have been her refusal to impose the death

6

penalty, thus potentially violating *Witherspoon v. State of Illinois*, 391 U.S. 510, 522 (III) (88 SCt 1770, 20 LE2d 776) (1968) (holding that "a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction"). Id. Given that possibility, the Eleventh Circuit stated that "the trial court had a constitutional duty to adequately investigate the need for a discharge prior to dismissing [the] juror," and that because the juror had already actively participated in deliberations, the "court's acceptance of ambiguous statements of a foreperson cannot, standing alone, be deemed sufficient." *Green v. Zant*, 715 F2d at 556. The State contends that the trial court erred in relying on *Green v. Zant* because it involved a death penalty case with an ill juror and because the conclusion that the trial court drew from the case regarding a trial court's duty to inquire into the need for a discharge before dismissing a juror is not supported by Georgia case law.

Although the juror discharge issue in *Green v. Zant* arose in a different context, the principles relied upon by the trial court – that the trial court's decision to remove a juror must be informed and supported by a sound basis – are found in Georgia law, including a case cited by the trial court, *Semega v. State*, 302 Ga. App. 879 (691 SE2d

7

923) (2010). A trial court's discretion to remove a juror is set forth in OCGA § 15-12-172, which provides that "[i]f at any time, whether before or after final submission of the case to the jury, a juror dies, becomes ill, upon other good cause shown to the court is found to be unable to perform his duty, or is discharged for other legal cause, the first alternate juror shall take the place of the first juror becoming incapacitated." And "[w]hile a trial court may properly exercise its discretion in deciding whether to remove a juror for 'good cause shown' under OCGA § 15-12-172, it must be an informed exercise. . . ." (Citation and punctuation omitted.) *Semega*, 302 Ga. App. at 881 (1). And "[t]here must be some sound basis upon which the trial judge exercises his discretion to remove the juror." *State v. Arnold*, 280 Ga. 487, 489 (629 SE2d 807) (2006), quoting *Green v. Zant*, 715 F2d at 554; see also *Semega*, 302 Ga. App. at 879 (1). Further, "both the need for investigation and the possibility of harmful error are heightened when a jury has begun deliberations or when a jury is deadlocked." (Citation and punctuation omitted.) *Semega*, 302 Ga. App. at 881 (1).

The State focuses solely on the juror's alleged sleeping during the trial as a basis for removal. Relying on *Gibson v. State*, 290 Ga. 6, 10 (5) (717 SE2d 447) (2011), the State takes the position that no further inquiry was necessary because the

8

trial court and counsel for the parties observed the conduct at issue. In *Gibson*, however, the trial judge warned the juror that he needed to stay awake and then directly inquired into the cause of the sleeping before removing the juror because "he felt the juror had missed much of the presentation of evidence during the first two days of trial." Id. Here, the trial court initially stated that the juror fell asleep, then woke up, and then fell asleep again, but then stated that "I was thinking she just shut her eyes and was listening, and she was just tired, or I didn't know what was going on with it." The court then sent the juror a cup of water, and does not know if any sleeping occurred after that. Defense counsel did not realize that anyone had to be woken up and questioned why this was not brought to everyone's attention during the trial. The trial court responded, "I didn't make a big deal about it." Thus, unlike *Gibson*, the trial court did not inquire directly with the juror about her alleged sleeping or determine what she might have missed during the trial. Not making such inquiry could been seen as a failure to conduct the "informed exercise" of discretion required to remove a juror. See *Dunn v. State*, 308 Ga. App. 103, 106 (1) (a) (706 SE2d 596) (2011) ("in the absence of any questioning of the juror on the record, the judge's assertion that the juror 'may have missed crucial parts of the evidence' due

9

to sleeping the previous day lacks any evidentiary support and, thus, appears to be mere speculation on his part").

The trial court's decision to grant Baker's motion for new trial was also based on the juror's alleged refusal to deliberate. Where, as here, a jury has begun deliberations and is deadlocked, "a particular danger of harmful error is posed by the removal of a lone holdout juror. Such a juror may well have concluded that a reasonable doubt exists as to the defendant's guilt and therefore has not refused to deliberate but has simply refused to engage in additional deliberation after reaching his conclusion." *Semega*, 302 Ga. App. at 882 (1). In *Semega*, the jury was deadlocked and the trial court questioned both the foreman, who stated that the juror in question was refusing to look at all of the evidence, and the dismissed juror, who stated that he had considered all of the evidence and followed the court's instructions, but did not believe that the defendant was guilty. Id. at 881 (1). The trial court relied on the foreman's statement and replaced the juror with the alternate. Id. Recognizing that "a holdout juror is not subject to dismissal for failing to acquiesce to the other jurors' conclusions regarding the persuasiveness of the evidence," this Court concluded that "further investigation would have been necessary to establish additional evidence of failure to deliberate or juror misconduct before resorting to the

10

extraordinary step of replacing a juror with an alternate." Id. at 882 (1); see also *Stokes v. State*, 204 Ga. App. 141, 142 (1) (418 SE2d 419) (1992) ("Alternate jurors do not serve to substitute for minority jurors who cannot agree with the majority.") (citation and punctuation omitted).

Here, the trial court granted Baker's motion for new trial based on its determination that it erred in failing to question the juror about her alleged sleeping and alleged failure to deliberate before dismissing her. Under the circumstances of this case, we cannot conclude that the trial court abused its discretion in granting the motion. See generally *Tunkara*, 298 Ga. at 491 (affirming grant of new trial where trial court exercised its broad discretion under OCGA § 5-5-25 to grant a new trial after a full hearing and the consideration of evidence).

2. The State contends that defense counsel encouraged the trial court to remove the juror at issue and therefore invited any error.

To support its contention, the State relies on *Wallace v. State*, 303 Ga. 34 (810 SE2d 93) (2018), and *Hicks v. State*, 295 Ga. 268 (759 SE2d 509) (2014). In *Wallace*, the defendant complained on appeal that the trial court's decision to replace the holdout juror with an alternate was not preceded by sufficient inquiry. 303 Ga. at 37 (2). Because Wallace had urged the trial court to dismiss the holdout juror without

11

questioning her first, the Georgia Supreme Court determined that Wallace had affirmatively waived[1] his argument that the trial court erred in dismissing the holdout juror and replacing her with an alternate. Id. In *Hicks*, the defendant claimed that the trial court erred in not responding to a jury question, but Hicks had expressly told the trial court not to answer the jury question. 295 Ga. at 275 (2). As a result, the Supreme Court ruled that Hicks had invited the alleged error. Id.

In contrast, Baker did not urge the trial court to dismiss the juror at issue without questioning her first. Although one of Baker's attorneys did state that, based on her past experience, when a juror fails to communicate, that is grounds for replacing the juror, that same attorney also stated that the court needed to inquire into whether the situation involved a refusal to deliberate or a difference of opinion and needed to address the juror directly about the issues raised. After the court questioned the foreperson, Baker's lead counsel suggested that they bring out the juror and instruct her that she needed to participate in deliberations. The State then moved to excuse the juror and replace her with an alternate. After further discussion, the trial court granted the State's motion. Baker's lead counsel promptly objected to the trial

---

[1] "[A]n affirmative waiver requires the intentional relinquishment or abandonment of a known right." (Citation and punctuation omitted.) *State v. Parks*, ___ Ga. App. ___ (1) (830 SE2d 284) (2019).

court's ruling and renewed that objection when the trial court removed the juror without questioning her directly. Under the circumstances, Baker did not invite error or waive his argument that the trial court erred in failing to question the juror directly before dismissing her. Cf. *Robinson v. State*, 336 Ga. App. 627, 630 (2) (785 SE2d 304) (2016) (where defense counsel indicated he had no objection to the trial court's decision to discharge a juror and utilize an alternate, defendant waived any argument that the trial court erred in that respect).

*Judgment affirmed. Miller, P. J., and Reese, J., concur.*