NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: March 3, 2026

S26A0362.  MEDINA v. THE STATE.

MCMILLIAN, Justice.

Terrance Medina appeals from his convictions for felony murder, aggravated assault, and possession of a firearm during the commission of a felony in connection with the shooting death of James Thornton.[1] On appeal, Medina argues that (1) the order in

---

[1] The crimes were committed on or about July 20, 2015. In January 2016, a DeKalb County grand jury indicted Medina for malice murder, felony murder, aggravated assault, and possession of a firearm during the commission of a felony. At a jury trial in January 2019, Medina was found not guilty of malice murder while the jury could not reach a unanimous verdict on the remaining counts, resulting in a partial mistrial. After reindictment on the same counts, except for malice murder, a jury trial took place in February 2022 where Medina was found guilty on all three counts. On February 16, 2022, the trial court sentenced Medina to serve life in prison with the possibility of parole for felony murder and five consecutive years in prison for possession of a firearm during the commission of a felony. The aggravated assault count was merged for sentencing purposes. Medina timely filed a motion for new trial, which was amended through new counsel on February 6, 2023. Following a hearing, the trial court denied the motion for new trial, as amended, on April 21, 2025. Medina timely filed a notice of appeal to this Court on May 1, 2025. The appeal was docketed to the term of this Court beginning in December 2025 and was orally argued on February 3, 2026.

which the trial court chose to give the charges on justification confused what was required for the separate defenses of self-defense and defense of habitation, (2) Medina's trial counsel rendered ineffective assistance by failing to object when the prosecutor argued in closing that defense of habitation did not apply because the house where the shooting took place was not Medina's personal dwelling, and (3) the trial court erred in charging that the State must make a prima facie case when an indictment charges that a crime may be committed by separate ways or methods. For the reasons that follow, we affirm.

The evidence at trial showed that on July 20, 2015, Medina visited his family's former home in DeKalb County. The home was where Medina grew up, but for about ten years it had not been occupied by any family member, although the utilities were still on and Medina paid the taxes. According to Medina, he visited the home regularly to clean and perform maintenance on the home. During those visits, Medina began seeing more evidence of criminal activity and break-ins around the house, and law enforcement had

2

been called on several occasions in connection with this suspected criminal activity.

After Medina entered the house on July 20, he went upstairs to his former bedroom. Medina testified that after opening the door to the bedroom, he saw a man, later identified to be Thornton, in a bed looking at Medina, at which point Medina pulled out his gun, pointed it at the man, and told him to "show me [your] hands" as it "looked to me like he was trying to do something or find something with his hands, and I wanted to make sure he was not going to get his hands on something that could be used against me." Medina testified that the man did not show his hands, but instead he stood up with a sheet wrapped around him and walked back and forth across the bed and the room in "an erratic pattern" a few feet from him. Medina stated that he repeatedly told the man to stop what he was doing and to back away from him. According to Medina, the man eventually got "right up in [his] face" and made a "threatening gesture" with his hand next to Medina's face. At that point, Medina shoved the man back, who then began screaming and waving his

arms around before "rushing at" Medina. Medina testified that he shot the man once in the chest in self-defense and then called 911.

Sergeant Lyn Schuler, a detective with the Dekalb County Police Department, responded to the 911 call. He testified that the house looked abandoned and that there did not appear to be any signs of forced entry. In the bedroom where Medina shot Thornton, there did not appear to have been a struggle as there were no items knocked over, and it appeared to Sergeant Schuler that Thornton was asleep when Medina entered the room because Thornton "had a bedsheet loosely tied around his waist that was still intact." Dr. Geoffrey Smith, the medical examiner who performed Thornton's autopsy, testified that the only injury of significance was a gunshot to the chest, which was the cause of death. The gun was "probably about a foot or so" from Thornton when shot. Dr. Smith testified that the injury was "certainly consistent" with Thornton lying in the bed asleep, waking up and starting to sit up, and being shot and then slumping over back in the bed. Medina called a firearm, blood spatter, and crime scene reconstruction expert as a witness who

4

testified that the evidence from the scene was consistent with the gun being fired while Thornton came at Medina, who fired from the doorway of the bedroom.

1. Medina first argues that the trial court erred by giving a misleading and confusing jury instruction on self-defense and defense of habitation. Specifically, Medina asserts that because the "self defense and the defense of habitation instructions were impermissibly blended together," the charge "altered the true meaning of these two separate and distinct principles of law."

At the close of the evidence, the trial court charged on affirmative defenses and justification generally. See Suggested Pattern Jury Instructions 3.00.00 and 3.01.10. The court then charged the definition of habitation from OCGA § 16-3-24.1,[2] followed by self-defense and defense of habitation. See Suggested Pattern Jury Instructions 3.10.10 and 3.12.10. After this, the trial court instructed on reasonable beliefs, no duty to retreat, threats

---

[2] OCGA § 16-3-24.1 provides: "As used on Code Sections 16-3-23 and 16-3-24, the term 'habitation' means any dwelling, motor vehicle, or place of business … ."

5

justifying homicide, forcible felony, and excessive force. See Suggested Pattern Jury Instructions 3.10.12, 3.10.13, 3.16.10, 3.10.11, and 3.16.20. However, the trial court did not read the title of the instruction when giving the instruction or otherwise clearly identify which charge it was giving as it was instructing the jury, instead going from one instruction to the next. At the conclusion of the trial court's charge, Medina objected to the way in which the trial court read these instructions, arguing that the trial court may have confused the jury when it gave the instructions back-to-back without any clarification as to which charge the trial court was giving and in reading the instructions out-of-order from the way they are arranged in the Suggested Pattern Jury Instructions, but the trial court overruled the objection. Each juror received a copy of the jury charge for deliberations.

On appeal, Medina does not claim that individually any of the charges were improper, but rather that the order in which the trial court chose to give the charges confused what was required for the separate defenses of self-defense and defense of habitation.

6

However, reading the jury instructions as a whole, we conclude that Medina has failed to show any error. See *Clark v. State*, 315 Ga. 423, 440 (2023) ("In evaluating a claim that the trial court was required to give certain jury instructions, we view the charge as a whole to determine whether the jury was fully and fairly instructed.") (quotation marks omitted); *Jackson v. State*, 306 Ga. 475, 477 (2019) ("A jury instruction must be adjusted to the evidence and embody a correct, applicable, and complete statement of law." (citation and punctuation omitted)).

As an initial matter, we recognize that the trial court did not give the instructions in the most logical order, charging on the definition of habitation and then on self-defense and then switching back to defense of habitation and then self-defense again. Moreover, while charging on these defenses, the trial court did not clearly explain whether an instruction pertained to self-defense or defense of habitation. However, the trial court fully charged on both the general concept of justification and the specifics of both self-defense and defense of habitation, and Medina does not challenge any of

these individual instructions. Although Medina claims that the charge wrongly incorporated into defense of habitation the concept that the defendant believe that his use of force was necessary and that his reasonable belief prompted his use of deadly force, defense of habitation also requires that the defendant reasonably believe that his use of force was necessary. OCGA § 16-3-23 provides: "A person is justified in threatening or using force against another when and to the extent that he or she *reasonably believes that such threat or force is necessary* to prevent or terminate such other's unlawful entry into or attack upon a habitation." (emphasis added). See *Fair v. State*, 288 Ga. 244, 257 (2010) ("[T]he elements set forth in the introductory clause [in OCGA § 16-3-23], however they are construed, are necessary to justify the use of *any* force or threats of force in defense of habitation in *any* circumstances.").

Medina also argues that the instructions incorrectly incorporated other concepts related to self-defense into the defense of habitation, such as the defendant could not be the aggressor, words alone can never justify deadly force, the victim's hands or fists

8

had to be found to be deadly weapons, and the defendant could not use excessive force. But upon reviewing the charges as a whole, we do not see that the order in which the trial court gave the charges confused the defenses because the trial court separately and correctly instructed on self-defense and the defense of habitation and the principles related to these defenses. See *Clark*, 315 Ga. at 440; *Jackson*, 306 Ga. at 477. Accordingly, this enumeration fails.[3]

2. Medina next argues that his trial counsel rendered ineffective assistance by failing to object when the prosecutor argued that defense of habitation does not apply because the house where

---

[3] The State argues that defense of habitation does not apply under OCGA § 16-3-23(2) if a homeowner enters his home and finds an intruder inside because defense of habitation only applies to repel an unlawful entry. We reject this argument as the cases cited to support that argument concern OCGA § 16-3-23(1) and (3), not OCGA § 16-3-23(2), which was at issue in this case. See *Nesbit v. State*, 321 Ga. 240, 248 (2025). The plain language of OCGA § 16-3-23(2) indicates that the defense of habitation may be asserted against someone who has already unlawfully and forcibly entered the residence. To that end, OCGA § 16-3-23(2) provides that a "person is justified in the use of force which is intended or likely to cause death or great bodily harm only if ... [t]hat force is used against another person who is not a member of the family or household and who unlawfully and forcibly enters *or has unlawfully and forcibly entered the residence* ... ." (emphasis added). See *Hammond v. State*, 277 Ga. 612, 615 (2004) (concluding that OCGA 16-3-23(2) "only requires the occupant to know that an unlawful entry has occurred before he is justified in using deadly force").

the victim was shot was not Medina's personal dwelling.

During closing arguments, the prosecutor argued that the house involved in the case was not Medina's residence because Medina lived in Athens, the house was abandoned and boarded up, and no one was living there. The prosecutor stated, "[S]o again, that house is not being used as a residence, defense of habitation gone." In response, Medina's counsel argued that the house was a residence as it was not abandoned, and Medina kept items at the house and paid taxes and utilities for the house. Also, trial counsel argued that one's house still counts as a residence for purposes of defense of habitation even if it is unoccupied for some time:

> What if you are going out of the country, sabbatical study, or whatever, and you leave your home for two years? You haven't slept in it for two years and you leave that foreign country and come back here and walk in the door and there is a naked man inside that begins to menace you … so that means that that's not your dwelling?

After closing arguments, the court charged the jury in connection with the defense of habitation that "as used in OCGA section 16-3-23, the term habitation means any dwelling" and that:

A defendant is justified in using force against another that is intended or likely to cause death or serious bodily injury when:

One, the other person is making or has made an unlawful and forcible entry into the residence;

Two, the defendant knows or has reason to believe the other person is making or has made an unlawful and forcible entry, and;

Three, the other person is not a member of the family or household.

To prevail on this claim of ineffective assistance, Medina must show both deficient performance and resulting prejudice. See *Strickland v. Washington*, 466 US 668, 687 (1984). To show deficient performance, Medina "must demonstrate that counsel performed counsel's duties in an objectively unreasonable way, considering all of the circumstances and in the light of prevailing professional norms." *Payne v. State*, 314 Ga. 322, 328–29 (2022). "The law recognizes a strong presumption that counsel performed reasonably," and Medina "bears the burden of overcoming this presumption." *Blocker v. State*, 316 Ga. 568, 578 (2023) (citation and punctuation omitted). Medina "must show that no reasonable

11

lawyer would have done what his lawyer did, or would have failed to do what his lawyer did not." Id. (citation and punctuation omitted). To establish prejudice, Medina "must show that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different." *Zayas v. State*, 319 Ga. 402, 409 (2024) (citation and punctuation omitted). If either prong is not met, we need not address the other. Id.

We conclude that trial counsel was not deficient because, knowing that the trial court was going to charge on defense of habitation, counsel made a reasonable strategic decision to counter the prosecutor's argument with vigorous argument rather than object. It was a contested issue whether the house met the definition of habitation and whether Medina was justified in using deadly force in defending against someone who had "unlawfully and forcibly entered the residence" under OCGA § 16-3-23(2).[4] Trial counsel reasonably sought to highlight the weakness of the State's argument

---

[4] The term "residence" is not defined in OCGA § 16-3-23 and was not defined in the jury instructions. At trial, Medina primarily relied on this subsection in asserting defense of habitation.

12

in order to buttress Medina's justification defense. See *Varner v. State*, 206 Ga. 726, 734–35 (2019) (explaining that counsel may have valid strategic reasons for not objecting to opposing counsel's argument misstating the law); *Goodrum v. State*, 303 Ga. 414, 417–18 (2018) (determining that trial counsel made a reasonable strategic decision in deciding to counter "absurd" arguments made by the prosecutor rather than to object to those statements). Therefore, this enumeration fails.

3. Finally, Medina argues that the trial court erred in charging that the State only needed to make a prima facie case of the crime charged where that crime may be committed by separate ways or methods because it lowered the State's burden of proof. As explained below, we review this claim for plain error, and while we agree that the trial court clearly and obviously erred in giving this instruction, we conclude that Medina has not shown how the error likely affected the outcome of the trial, so he has not shown plain error.

At the charge conference, the State requested a non-pattern jury charge on "conjunctions," which not only instructed the jury on

13

the meaning of conjunctions within the charge but also provided that the State was required to make a prima facie case of the crime charged by proof of any one of the methods alleged in the indictment. Medina objected to the charge on two bases, including that there was no conjunction used in the felony murder count and "[t]he court is already going to tell them that each particular count of each particular offense has to be proven beyond a reasonable doubt as to its own element. So anything else is basically making a comment on the evidence at this point in time." After overruling the objection, the trial court charged the jury as follows, with the language Medina challenges on appeal in italics:

> When a defendant is charged with a violation of the law in an indictment where the crime may be committed in separate ways or methods, and said crime is charged as being committed in more than one way or method, the crime might be charged conjunctively, using the word "and" to list all ways or methods.
>
> However, the state is not required to prove all of such separate ways or methods alleged in the indictment; *rather, the state must make a prima facie case by proof of any one of the ways or methods.*

Medina renewed his objection to this jury charge at the conclusion

14

of the trial court's jury instruction.

As an initial matter, although Medina objected to this instruction, he did not object on the grounds that it lowered the State's burden of proof or point to the reference to "prima facie case" as error. "Because [Medina] did not object to these jury charges on the grounds he now raises before the jury retired to deliberate, appellate review of his claims is precluded unless the particular jury instruction in question was 'plain error which affects [his] substantial rights.'" *Woodard v. State*, 296 Ga. 803, 806 (2015) (citation omitted). To establish plain error:

> First, there must be an error or defect – some sort of "[d]eviation from a legal rule" – that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it "affected the outcome of the trial court proceedings." Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error – discretion which ought to be exercised only if the error "'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'"

*Walton v. State*, 322 Ga. 401, 408 (2025) (citations omitted).

It was a clear and obvious error to charge that the State was only required to make a "prima facie case" of one of the ways or means alleged in the indictment. See *Mohamed v. State*, 276 Ga. 706, 708 (2003) (holding that a statute charged to the jury constituted "an impermissible shifting of the burden of proof" where the statute stated that "such possession shall be prima-facie evidence" that a criminal violation had occurred); *Fleming v. State*, 138 Ga. App. 97, 97 (1976) (holding that it was error to charge that the State only needs to make out a "prima facie case" and that the defendant has the burden to introduce evidence to overcome the State's prima facie case); *Bush v. State*, 129 Ga. App. 160, 160 (1973) (same). As explained in *Bartlett v. State*, 196 Ga. App. 174, 175 (1990), the "prima facie case" language in the "conjunctions charge" appears to be referring to the State's burden to overcome a defendant's motion for a directed verdict, not the State's burden at trial, and has no place in jury instructions.

However, we conclude that Medina has failed to show that the error likely affected the outcome of the trial under the third prong

16

of the plain error standard. Medina admitted that he shot Thornton, and the primary issue at trial was whether Medina was justified. The justification defenses were not affected by the "prima facie case" charge because although the charge reduced the burden of proof on the "ways or methods alleged in the indictment," Medina's justification defenses were not alleged in the indictment. As a result, the "prima facie" language did not reduce the State's burden of disproving Medina's justification defenses. Because the evidence that Medina shot Thornton was overwhelming and the trial court otherwise properly instructed the jury on the beyond-a-reasonable-doubt-standard as it applied to the State's burden to disprove the justification defenses, Medina has not shown that the error likely affected the outcome of the trial. See *Mohamed*, 276 Ga. at709 (stating that an impermissible instruction "is harmless so long as the instruction was applied to an element of the crime that was not at issue in the trial, and if the evidence of guilt is overwhelming"). Cf. *Debelbot v. State*, 308 Ga. 165, 169 (2020) (mischaracterization of reasonable doubt standard was "uniquely harmful" because the

17

case was almost entirely circumstantial and two individuals had the opportunity to inflict the trauma that led to the death).

*Judgment affirmed. All the Justices concur.*